[Civ. No. 30992.    Second Dist., Div. Four.    Sept. 8, 1967.]

DAVID B. HILL et al., Plaintiffs and Appellants, v. GIBRALTAR SAVINGS AND LOAN ASSOCIATION OF BEVERLY HILLS et al., Defendants and Respondents.

Stanley C. Poster for Plaintiffs and Appellants.

Frank W. Swann, Jr., for Defendants and Respondents.

JEFFERSON, J.—This suit concerns the manner in which a sale of realty was conducted by a trustee under a power of sale in a deed of trust.

Plaintiffs husband and wife, holders of a note secured by a second deed of trust, filed a complaint for damages against Gibraltar Savings and Loan Association of Beverly Hills (hereafter "Gibraltar"). the holder of the first deed of trust, and against Security Allied Services (hereafter "Security"), its trustee, based on alleged irregularities in the conduct of a trustee sale which extinguished plaintiff's security interest. At the trial plaintiffs stipulated to a judgment in favor of Gibraltar and proceeded against Security alone. From a judgment in favor of Security, plaintiffs bring this appeal.

No real dispute exists as to the material facts. On March 22, 1962, Gibraltar, as beneficiary under the first deed of trust, caused to be recorded a notice of default and election to sell the subject property. As trustee, Security duly published this notice. On March 30, 1962, plaintiffs received a copy of the

notice and, on July 17, 1962, they received written notice that the trustee's sale was to be held on August 10, 1962. Stated in the notice was the fact that, as provided in the deed of trust, the property was to be sold "to the highest bidder for cash payable at the time of sale."

The sale was held as scheduled at 11 a.m. on August 10, 1962. Plaintiff David Hill and his attorney were present. The auctioneer, an officer of Security, commenced the sale. Gibraltar, through its representatives, made an opening bid of $20,955.38, which was the amount due under its note secured by the first trust deed, including costs. At this point, Mr. Siegal, a third party previously unknown to either plaintiffs or defendants, bid $21,000 and qualified the bid by showing a cashier's check in his hands in excess of the amount bid. Thereafter, plaintiff bid the sum of $22,000, but when the auctioneer asked him to show cash or a cashier's check in that amount, he produced a cashier's check in the amount of only $20,955.38. The auctioneer refused to accept the bid stating that he had not properly qualified it. Plaintiff then informed the auctioneer that he held a second trust deed on the property and asked that the sale be postponed for a "couple of hours" in order to give him time to secure the additional amount required to qualify his bid. Siegal demanded that Security go ahead with the sale. No other bidders were present. After consulting with a representative of Gibraltar, who asked that the auctioneer proceed with the sale, the auctioneer refused plaintiff's request for a postponement and sold the property to Siegal for the sum of $21,000.

The trial court concluded that under the circumstances Security had no duty to postpone the sale.

Plaintiffs take the position that the facts establish, as a matter of law, a breach of a duty owed to them as the junior lienholder, and for which breach they assert they are entitled to damages.

The questioned conduct of the trustee should be viewed keeping in mind these principles: ■ A sale under a deed of trust must be conducted in strict compliance with the terms of the instrument containing the power of sale. (*Kleckner* v. *Bank of America*, 97 Cal.App.2d 30, 33 [217 P.2d 28]; 34 Cal.Jur.2d 130; 59 C.J.S. 959.) The sale must be conducted fairly, openly, with due diligence and with the exercise of sound discretion on the part of the trustee, in order to protect the rights of all interested persons and to obtain a reasonable price. (*Brown* v. *Busch*, 152 Cal.App.2d 200, 204 [313 P.2d

19] ; *Kleckner* v. *Bank of America, supra,* 97 Cal.App.2d 30, 33; 34 Cal.Jur.2d 130-131; 59 C.J.S. 959-960; 90 A.L.R.2d 564.) The court in *Kleckner, supra,* stated (at pp. 33-34):

■ "It is the duty of a trustee, once it has started, to continue with reasonable dispatch with a sale under a trust deed; the terms being cash, the trustee is not required to hold up the sale while sundry bidders leave the place to go to banks or elsewhere to get cash. Such conduct of a sale could well result in confusion, in the dispersal of bidders present, and in loss to persons represented by the trustee."

■ Here, the trustee—through its auctioneer—made what could be referred to as "a judgment call" in deciding against allowing the postponement requested. The terms of the trust instrument called for the property to be sold to the highest bidder for cash payable at the time of the sale. When plaintiff asked to have the sale postponed to qualify his bid by going for more money, the trustee was in this position: There was already a qualified bid made by Mr. Siegal in excess of the opening bid of the beneficiary Gibraltar. No other bidders were in evidence. Indeed, Siegal's bid was only approximately $44 in excess of Gibraltar's ($21,000 as against $20,955.38). However, Gibraltar, obviously desirous of having cash rather than the property, requested that the trustee not postpone the sale. Siegal demanded that it continue. Had the trustee disregarded the wishes of its beneficiary and granted plaintiff's request, Gibraltar's opening bid might well have ended up as the only bid. There was no guarantee that plaintiff, once he left the premises with his cashier's check in his possession, ostensibly to obtain more money, would ever return, with or without it. Siegal, on the other hand, could have withdrawn his bid (see *Hibernia Sav. & Loan Soc.* v. *Behenke,* 121 Cal. 339 [53 P. 812]) and also left for good. We cannot say, on the evidence presented, that as a matter of law the trustee's action was unreasonable.

There is language in the *Kleckner* case, *supra,* which at first blush appears to support plaintiff's position. In that case a trustee's sale for cash was conducted upon foreclosure by the beneficiary of a second deed of trust. The holder of the third deed of trust appeared and, through a representative, bid on the property. However, he did not have the cash to qualify his bid and requested time to go to a bank to get it. When he returned with the money about 15 minutes later, the property had already been sold to the beneficiary on the second trust deed for the amount due on her lien. Affirming a judgment

refusing to set aside the sale, the court concluded that the sale was properly held and that the trustee had not acted arbitrarily in refusing to hold it up. The court pointed out that the auctioneer was not advised that the bid was being made on behalf of the plaintiff as beneficiary under a third trust deed, and indicated that had such notification been given, to have refused a delay of a few minutes to go to a bank "might well have been held an unreasonable exercise of the trustee's power of sale."

The crucial distinguishing factor between the situation presented in *Kleckner* and the facts of this case—and we believe the principal basis for the court's reasoning in making the above observation—is that the trustee in *Kleckner* had no other bids when the request for the postponement was made (the property ultimately being sold to the beneficiary on the second trust deed for the amount of the lien). Here, there was a qualified bid from a third party higher than that of the beneficiary which, as we indicated above, might have been lost had the sale been delayed.

In concluding that the evidence supports the finding the trustee's action was reasonable, we do not reach the question whether the trustee could be held liable for damages for an unreasonable refusal to delay a trustee sale, or whether the only proper remedy for any such irregularity would be a suit to set the sale aside.

As a final observation, we note from the record a complete absence of proof of any monetary damages incurred by plaintiffs even had they shown entitlement thereto. Plaintiffs sought damages of $8,000, which was the approximate amount covered by their security interest. However, no evidence whatsoever was presented as to the market value of the subject property. There is nothing to indicate it had any value in excess of what it sold for, which was an amount barely covering the secured interest of the senior lienholder.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.